DALE M. FIOLA, SBN 76397
Attorney at Law
200 North Harbor Boulevard, Suite 217
Anaheim, California  92805
Fiolaw1@aol.com  Email
(714) 635-7888 Phone
(714) 635-3323 Fax

Law Office of Mark Boling
Mark Boling, SBN 101589
maboling@earthlink.net
21986 Cayuga Lane
Lake Forest, CA 92630
(949) 588-9222 Phone
Attorneys for Plaintiffs JASON N. NGUYEN and TAM NGUYEN, individually and on behalf of all other similarly situated employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JASON N. NGUYEN and TAM NGUYEN, individually and on behalf of all other similarly situated employees,<br><br>Plaintiffs,<br><br>vs.<br><br>IMPAC MORTGAGE, CORP. dba CASHCALL MORTGAGE and CASHCALL, INC.,<br><br>Defendants. | CASE NO.:<br><br>**CLASS/COLLECTIVE ACTION**<br><br>COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, RESCISSION AND RESTITUTION:<br><br>1. UNPAID OVERTIME WAGES *(LABOR CODE §§ 510 and 1194);*<br>2. INADEQUATE MEAL PERIODS *(LABOR CODE §§ 226.7, 512);*<br>3. UNLAWFUL DEDUCTIONS FROM WAGES EARNED (*LABOR CODE §§ 221-223, 400-410*);<br>4. UNFAIR COMPETITION VIOLATIONS (BUS. & PROF. CODE §§17200-17208);<br>5. FAIR LABOR STANDARDS ACT *(29 U.S.C. §§ 207(a), 216(b)).*<br><br>DEMAND FOR JURY TRIAL |

NGUYEN: CLASS COMPLAINT

Plaintiffs JASON N. NGUYEN ("JASON NGUYEN") and TAM NGUYEN on behalf of themselves and all other similarly situated employees complains and alleges as follows:

## I.  NATURE OF ACTION

1.    Plaintiffs are seeking an individual and collective claim against Defendants for unpaid overtime compensation and interest thereon under *29 U.S.C. §§ 207(a) and 216 (b)* of the Fair Labor Standards Act of 1938 on behalf of Plaintiff and all other loan agents who are or have been employed by Defendants, and each of them, at their call centers located in Orange County and elsewhere in the State of California ("Call Centers") during the relevant statute of limitations period for each claim.  Plaintiffs also seek the recovery of costs, expert witness fees, and reasonable attorneys' fees in accordance with *29 U.S.C. § 216(b).*

2.    Plaintiffs are seeking individual and class claims against Defendants for unpaid overtime compensation and interest thereon, compensation for missed meal and rest periods, compensation for unlawful deductions from earned wages, failure to report all earnings, injunctive, declaratory and other equitable relief, and reasonable attorneys' fees and costs, under *Cal. Labor Code* §§ 203, 218.5, 221-223, 226, 226.3, 226.7, 400-410, 510, 512, 1194, and *C.C.P.* §1021.5 on behalf of Plaintiff and all other loan agents who are or have been employed by Defendants, and each of them, at their call centers located in Orange County and elsewhere in the State of California ("Call Centers") during the relevant statute of limitations period for each claim.

3.    Plaintiffs also seek declaratory relief invalidating Defendants' Acknowledgement Forms and injunctive relief and restitution of all benefits Defendants have enjoyed from their failure to pay overtime compensation, their failure to provide adequate meal and rest periods, and

NGUYEN: CLASS COMPLAINT

their practice of making unlawful deductions from the wages of Plaintiffs and all other similarly situated employees, under *Cal. Business and Professions Code* 17200-17208 during the relevant statute of limitations period. Defendants' Employee Acknowledgement prevents and prohibits "concerted activity" by loan agents to seek mutual aid and protection through class, collective and representative actions in violation of Section 7 of the National Labor Relations Act (NLRA) (29 *U.S.C.* § 158) and Section 8 by interfering with and restraining protected rights under the NLRA to engage in concerted action whereby groups of employees can engage in legal action to protect and preserve work-place rights.

## II. JURISDICTION

4.    This Court has original jurisdiction over Plaintiffs' individual and collective claims for unpaid overtime wages in violation of 29 *U.S.C.* §§ 207 (a) and 216 (b) of the Fair Labor Standards Act of 1938 under 28 *U.S.C.* § 1331.

5.    This Court has supplemental jurisdiction over Plaintiffs' individual and class state claims claims, which form part of the same case or controversy under Article III of the United States Constitution as Plaintiffs' federal claims herein under 28 *U.S.C.* § 1367 (a), which necessarily includes supplemental jurisdiction over:

a)    Plaintiffs' claims for unpaid overtime wages under *Cal. Labor Code §1194.*

b)    Plaintiffs' claims for penalties for failure to pay wages of discharged employees under *Cal. Labor Code §203.*

c)    Plaintiffs' claims for meal period violations and unlawful deductions from wages due under *Cal. Labor Code §218.*

d)    This Court has jurisdiction over Plaintiffs' claims for declaratory relief, injunctive relief and restitution of ill-gotten benefits

NGUYEN: CLASS COMPLAINT

1    arising from Defendants' unfair, deceptive or unlawful business practices

2    under *Cal. Business & Professions Code §§ 17203 and 17204.*

3    ### III.   VENUE

4    6.    Venue as to each named Defendant is proper in this judicial

5    district, pursuant to 28 *U.S.C.* § 1391 (b). Said Defendant(s), either

6    maintains headquarters or other offices, transacts business, and/or has an

7    agent in Orange County, California and Defendant is otherwise within this

8    Court's jurisdiction for purposes of service of process.  The unlawful acts

9    alleged herein have a direct effect on Plaintiffs within the State of

10   California and within Orange County. Defendants operate a few offices in

11   Orange County within the State of California and employ numerous Class

12   Members in Orange County.  Plaintiffs JASON N. NGUYEN and JASON

13   NGUYEN were employed as a loan agent by Defendants, and each of

14   them, in Orange County, California.

15   ### IV.   PARTIES

16   *A.    Plaintiff*

17   7.    At all relevant times, Plaintiff JASON NGUYEN resided in

18   Orange County, California.  Plaintiff JASON NGUYEN was employed by

19   Defendants, and each of them, as a consumer and mortgage loan agent in

20   Defendants' Orange, California Call Centers.

21   8.    Plaintiff JASON NGUYEN was employed with CashCall, Inc.

22   ("CashCall"), located at 1 City Blvd., Orange, CA, as a consumer loan

23   agent from approximately November 2011 to May 2013 and approximately

24   December 2013 to October 2016.  During the time period from

25   approximately November 2011 to May 2013, Scott Roberts was Plaintiff

26   JASON NGUYEN's direct supervisor at CashCall.  During the time period

27   from approximately December 2013 to November 2014, Corey Lehman

28   was Plaintiff JASON NGUYEN's direct supervisor at CashCall.  During

NGUYEN: CLASS COMPLAINT

the time period from approximately November 2014 to October 2016,
Rodderick "Roddie" Anderson was Plaintiff JASON NGUYEN's direct
supervisor at CashCall.

9.      Plaintiff JASON NGUYEN was employed with CashCall
Mortgage, a division of CashCall ("CashCall Mortgage"), located in
Anaheim, CA, as a mortgage loan agent for approximately 6 – 7 months in
and around mid to late 2013.  During the time period from approximately
May 2013 to December 2013, Kevin Knoyles was Plaintiff JASON
NGUYEN's direct supervisor at CashCall Mortgage.

10.      When working back and forth between CashCall and
CashCall Mortgage, Plaintiff JASON NGUYEN's employer was CashCall,
Inc.

11.      Plaintiff JASON NGUYEN was employed with Impac
Mortgage, Inc. dba CashCall Mortgage ("Impac"), located at 1 City Blvd.,
Orange, CA, as a mortgage loan agent from approximately October 2016
to January 2017.  During the time period from approximately October
2016 to November 2016, Aaron Vo was Plaintiff JASON NGUYEN's
direct supervisor at Impac.  During the time period from approximately
November 2016 to January 2017, Daniel Costa was Plaintiff JASON
NGUYEN's direct supervisor at Impac.

12.      During the extent of Plaintiff JASON NGUYEN's above-
mentioned employment periods as a loan agent, he typically worked
approximately 6-7 days a week averaging 10-13 hours of work a day from
Monday through Friday plus weekends or 60 to 80 hours a week.  Plaintiff
JASON NGUYEN's was not paid overtime or even straight time for hours
he worked in excess of 50 hours a week and not paid statutory required
wages for meal/rest break periods.

NGUYEN: CLASS COMPLAINT

1  13.    At all relevant times, Plaintiff TAM NGUYEN resided in

2  Orange County, California.  Plaintiff TAM NGUYEN was employed by

3  Defendants, and each of them, as a mortgage loan agent in Defendants'

4  Anaheim or Orange, California Call Centers.

5  14.    Plaintiff TAM NGUYEN was employed with CashCall

6  Mortgage, a division of CashCall, Inc. ("CashCall Mortgage"), located in

7  Anaheim, CA, as a mortgage loan agent from approximately December

8  2011 to August 2013.  During the time period from approximately

9  December 2011 to August 2013, Audi Gardner, Brooks Lamb and Miles

10  Masters were Plaintiff TAM NGUYEN's direct supervisor(s) at CashCall

11  Mortgage.

12  15.    Plaintiff TAM NGUYEN was employed with Impac

13  Mortgage, Inc. dba CashCall Mortgage ("Impac"), located at 1 City Blvd.,

14  Orange, CA, as a mortgage loan agent from approximately February 2015

15  to March 2017.  During the time period from approximately February 2015

16  to March 2017 Daniel Costa was Plaintiff TAM NGUYEN's direct

17  supervisor at Impac.

18  16.    During the extent of Plaintiff JASON NGUYEN's above-

19  mentioned employment periods as a loan agent, he typically worked

20  approximately 6-7 days a week averaging 10-13 hours of work a day from

21  Monday through Friday plus weekends or 60 to 80 hours a week.  Plaintiff

22  TAM NGUYEN's was not paid overtime or even straight time for hours he

23  worked in excess of 50 hours a week and not paid statutory required wages

24  for meal/rest break periods.

25  17.    Plaintiffs JASON NGUYEN and TAM NGUYEN were a

26  putative class member of a class action lawsuit initially filed on May 20,

27  2014 and dismissed without prejudice of class claims on January 13, 2017

28  in the Orange County Superior Court of California entitled *Thanh Le v.*

NGUYEN: CLASS COMPLAINT

*CashCall, Inc. et al.*, Case No. 30-2014-00724582-CU-OE-CXC, which alleges substantially similar claims and general set of operative facts against Defendants, and each of them.

**B.   Defendants**

18.     Defendants CashCall and Impac are, and at all times mentioned herein were, organized and existing under the laws of the State of California with their principal place of business located in Orange County, California.  Defendants, and each of them, are primarily engaged in the financial services business in California providing consumer loans, "pay day" loans or secured mortgages.

19.     In 2015, CashCall Mortgage was acquired by Impac Mortgage Holdings Inc. (IMH), an Irvine, California-based mortgage originator founded in 1995.  CashCall Mortgage continues to operate as a separate division of IMH under its original name as Impac Mortgage, Corp. dba CashCall Mortgage.

## V.   FACTUAL BACKGROUND

20.     Defendants operate and, at all times during the liability period, have done business in Orange County and elsewhere within California.  At the Orange Call Center and at its other Call Centers, Defendants have, among other things, originated, serviced, sold, transferred and assigned consumer loans, "payday" loans and secured mortgages.  In the course of their employment with Defendants, Plaintiffs and all other similarly situated employees have pre-qualified borrowers, sold loans and processed applications.

21.     The pattern, practices and policies that are complained of herein were enforced against in excess of 500 similarly situated loan agents employed at Defendants' Orange County Call Center(s) and other

NGUYEN: CLASS COMPLAINT

1    Call Centers within the State of California during the relevant liability

2    period.

3         22.    Plaintiffs and all other similarly situated employees employed

4    by Defendants worked more than 50 hours per week and were only paid

5    overtime pay for 10 hours maximum. Additionally, if Plaintiffs and all

6    other similarly situated employees were to clock-in incorrectly or there

7    were any discrepancies about their time card or the hours they worked,

8    they would be penalized and would be denied the 10 hours of overtime pay

9    completely.  Plaintiffs and all other similarly situated employees were

10   instructed to clock out after 8-12 hours although they worked well beyond

11   the designated 8-12 hours per day and if they did not clock out after 8-12

12   hours of work, they were denied any overtime payment.

13        23.    Plaintiffs and all other similarly situated employees are

14   covered and/or has been covered by California Industrial Welfare

15   Commission Occupational Wage Orders Nos. 4-2000 and 4-2001, *8 Cal.*

16   *Code of Reg.* §11040 (hereinafter collectively "Wage Orders").  These

17   Wage Orders require employers to pay employees 1 ½ times their normal

18   hourly rate for hours worked in excess of eight (8) per day and in excess of

19   forty (40) per week, and at twice the normal hourly rate for hours worked

20   in excess of twelve (12) per day and eight (8) on the seventh day worked in

21   a work week. Defendants, at all times mentioned herein, intentionally

22   failed to pay all overtime compensation earned by Plaintiffs and all other

23   similarly situated employees and failed to obtain any agreement or consent

24   to any fluctuating workweek (FWW) and to pay all overtime required for

25   work performed in excess of 10 hours of overtime a week in order to avail

26   themselves of the 29 *C.F.R.* § 778.114(a)..

27        24.    At all relevant times, Plaintiffs and all other similarly situated

28   employees have regularly worked in excess of five (5) hours a day without

NGUYEN: CLASS COMPLAINT

being afforded a meal period of at least a half-hour in which they were relieved of all duties.  Plaintiffs and all other similarly situated employees have also regularly worked at least ten (10) hours a day without receiving a second meal period of at least a half hour in which he was relieved of all duties. Plaintiffs and all other similarly situated employees have worked in excess of 4 hours a day without being provided a 10-minute rest period. Plaintiffs and all other similarly situated employees have worked an 8-hour work period without being provided at least a 20-minute rest period in the aggregate or two 10-minute rest periods. Defendants have known these facts and permitted, encouraged and/or required loan agents, including Plaintiff, to forego these meal and/or rest periods. Plaintiffs and all other similarly situated employees did not fall within any exemption to the meal or rest period requirements of the Labor Code and applicable wage orders. Plaintiff and loan agents were instructed to "clock out" at approximately 11:00 or 12:00 for lunch but would not be permitted to take the actual lunch break until after 1:30 when funding closed for the day.  When they finally took a lunch break, they continued to work and eat at their desk – a practice prohibited by Wage and Hour Regulations.

25.    At all relevant times, Defendants have deducted sums earned by or due to Plaintiff and other similarly situated loan agents for many reasons, including, but not limited to, discrepancies in their time records or working in excess of 10 hours of overtime per week.

26.    At all relevant times, Defendants have had a consistent policy and practice of: (1) permitting, encouraging, and/or requiring Plaintiffs and all other similarly situated employees to work in excess of eight (8) hours per day and in excess of forty (40) hours per week without paying them all overtime compensation as required by California state wage and hour laws; (2) permitting, encouraging, and/or requiring Plaintiffs and all other

NGUYEN: CLASS COMPLAINT

similarly situated employees to work in excess of five (5) hours per day without taking an adequate meal period of at least one-half hour and to work in excess of ten (10) hours per day without taking a second adequate meal break of at least one-half hour; (3) making unlawful deductions from wages earned by or due to Plaintiffs and all other similarly situated employees (Industrial Welfare Order 4-2001 ("IWO") 11(A) and (B); (4) willfully failing to pay all compensation owing (including unpaid overtime) in a prompt and timely manner to Plaintiffs and all other similarly situated employees;  (5) willfully failing to comply with the following statutory provision: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, etc;" (6) willfully failing to comply with IWO 4-2001(7)(A) ("every employer shall keep accurate information with respect to each employee including the following: …(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals, and total daily hours worked shall also be recorded); (7) by willfully failing to relieve Plaintiffs and all other similarly situated employees of all duty during a 30-minute meal period away from their work stations (IWO 11(A)); and (8) by willfully failing to provide rest periods for Plaintiffs and all other similarly situated employees working longer than 3 ½ hours of at least a 10 minute rest period per every four (4) hours or major fraction thereof worked (IWO 12).

27.    Plaintiffs and all other similarly situated employees were required to work 40 hours a week and were paid a base hourly rate of $10.75 for those regular 40 hours a week, plus overtime of additional 10

NGUYEN: CLASS COMPLAINT

hours a week at 1 ½ (1.5 x) times their regular rate of pay.  In addition, Defendants had a bonus plan that would pay loan agents a bonus based upon a "tier" program of approximately 20 levels.  Each level reached would result in an increase in their hourly pay.   However, under threat of discipline, Plaintiffs and all other similarly situated employees were required to work in excess of 50 hours a week and, in many instances, Plaintiffs and all other similarly situated employees would work from 20-60 hours of overtime a week "off the clock;" hours that Defendants knew or should have Plaintiffs and all other similarly situated employees typically worked.  The practice of Plaintiffs and all other similarly situated employees working "off the clock" was so well-known, long-standing, systemic and accepted at Defendants' operations that some of Defendants' existing supervisors or managers at the time of Plaintiffs' employment period, e.g., Scott Roberts, Daniel Reader, Matthew Faria, Don Johnson, and Johnny Vo, had worked off the clock when they had been in the position of a CashCall consumer loan agent.  Plaintiffs and all other similarly situated employees were not required to record their time worked on the job, especially "off the clock" hours worked, but Defendants possessed Cisco System Time Steps or other computer data applications that noted loan agents log "time-ins" and "time-outs," along with time records for transactions and notes in borrowers' respective files, including Call logs and Computer Activities logs.  Defendants had an explicit policy that they would not pay any overtime in excess of 10 hours a week and an unwritten policy that loan agents were to work as many hours beyond 10 hours of overtime uncompensated.  Loan agents never signed an alternate workweek agreement in compliance with Labor Code Sections 510 and 511.  In those cases where Plaintiffs and all other similarly situated employees reported working more than 10 hours of overtime on time

NGUYEN: CLASS COMPLAINT

1   records in any given pay period, those loan agents would be counseled,

2   warned or disciplined. However, as long as the loan agent did not report

3   the "off the clock" hours worked, Defendants never disciplined,

4   terminated, counseled or warning Plaintiffs and all other similarly situated

5   employees essentially turning a "blind eye" to "off the clock" work, and

6   intentionally developed a policy, practice or procedure for not leaving any

7   physical or digital record of loan agents working "off the clock" so that

8   management and Defendants could later claim ignorance as to the "off the

9   clock" hours worked by Plaintiffs and all other similarly situated

10  employees.

11      28.    Defendants' policy, pattern and practice was to subvert and

12  circumvent the laws' requirements that loan agents be paid all overtime

13  worked in excess of 40 hours a week and 8 hours a day.  In any event, loan

14  agents followed an online script called "Methods," processed loan

15  applications on line, used an automated underwriting system to ascertain

16  loan qualifications and which provided various loan packages and

17  programs that loan agents were required to propose to prospective

18  borrowers.  Plaintiffs and all other similarly situated employees were

19  entitled to be paid all overtime compensation under California's wage and

20  hour laws, including *Cal. Labor Code* §§ 510 and 1194.

21      29.    At all relevant times, Defendants did not afford Plaintiffs and

22  all other similarly situated employees proper meal periods, as required by

23  *Cal. Labor Code* §§ 226.7 and 512, along with rest periods.  Plaintiffs and

24  all other similarly situated employees are owed an additional hour of pay at

25  their regular rate for each day they did not take lawful meal or rest periods.

26      30.    At all relevant times, Defendants have made a practice of

27  deducting amounts from wages earned by or due to Plaintiffs and all other

28  similarly situated employees in violation of *Cal. Labor Code* §§ 221-223

NGUYEN: CLASS COMPLAINT

1  and 400-410. Plaintiffs and all other similarly situated employees are

2  entitled to recovery of the unlawfully deducted wages.

3         31.    Defendants have willfully failed and refused, and continue to

4  fail and refuse, to timely pay wages due for overtime compensation to

5  former loan agents, including Plaintiff, at the conclusion of their

6  employment with Defendants, entitling these former loan agent employees

7  to statutory penalties under *Cal. Labor Code* §§ 201-203.

8         32.    On or about January 21, 2011, a class action was filed against

9  CashCall, Inc. in the Orange County Superior Court, Complex Civil

10  Center, entitled *Aaron Garcia v. CashCall, Inc., et al.* ("*Garcia*") and

11  assigned Case No. 30-2011-00443224 CU-OE-CXC, alleging unpaid

12  wages and overtime wages, meal period premiums, failure to properly

13  itemize wage statements, waiting time penalties, and unfair business

14  practices.  That complaint alleged violation of *Cal. Labor Code* §§ 200,

15  201, 202, 203, 226(a), 510, Industrial Welfare Commission Wage Order 4-

16  2001, and *Cal. Business and Professions Code* § 17200.  The Class

17  definition identifies "All current and former loan agents, loan

18  representatives, and other current and former employees who performed

19  the functions of loan agents and loan representatives [of CashCall, Inc.].

20  (See ¶ 11, *Garcia* Complaint)

21         33.    On information and belief, prior to January 21, 2011,

22  Defendant CashCall, Inc. did not use a "CashCall Employee

23  Acknowledgement Form" that prospective employees or new hires were

24  required to sign in order to become employed with Defendant CashCall

25  that required arbitration of all employment disputes, a jury trial waiver,

26  required individual arbitration, prohibition of class arbitration, and a

27  further prohibition that barred an employee from serving as a class

28  representative.

NGUYEN: CLASS COMPLAINT

34.     On March 7, 2011, Defendant CashCall, Inc. filed its answer to the *Garcia* Class Complaint failing to identify any arbitration agreement, jury trial waiver or class representative bar in any affirmative defense.

35.     During this time period, a similar class action was filed against Defendant CashCall, Inc. entitled *Carlo Smith v. CashCall, Inc.* ("*Smith*") in the Orange County Superior Court and assigned Case No. 30-2011-00476023, also alleging class allegations for wage and hour violations.

36.     On February 3, 2012, the Court consolidated *Smith* case with the *Garcia* case and made the *Garcia* case the lead case.

37.     To reduce its exposure to class action litigation and avoid paying all overtime compensation and other benefits to its non-exempt employees, between January 21, 2011 and August 1, 2011, Defendant CashCall, Inc. required new hires to execute CashCall Employee Acknowledgement Forms, as a condition of employment, which required the employee to agree to the following:

(i)     That any dispute or controversy arising out of, relating to, or concerning employment shall be settled by arbitration to be held in Orange County, California, in accordance with the employment dispute resolution rules then in effect with JAMS;

(ii)    That CashCall, Inc. and the employee shall "each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses."

(iii)   That the arbitration clause constitutes a waiver of the employee's right to a jury trial;

(iv)    An acknowledgement as follows:

NGUYEN: CLASS COMPLAINT

"I UNDERSTAND AND AGREE THAT ALL DISPUTES INCLUDING ANY CLASS OR REPRESENTATIVE CLAIMS I MAY HAVE AGAINST CASHCALL, ITS OWNERS, MANAGERS, EMPLOYEES AND AGENTS SHALL BE RESOLVED BY BINDING ARBITRATION ONLY ON AN INDIVIDUAL BASIS. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW ME TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION."

38.     Paragraph 3 of the first generation of CashCall Employee Acknowledgement Forms were generated in mid-2011 and remained in effect until the fall of 2012. That form required the "Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses."

39.     The first generation of CashCall Employee Acknowledgement Forms came under fire in the litigation of *Orin Squires v. CashCall, Inc.*, filed in the Orange County Superior Court and assigned Case No. 30-2012-00577899. On September 6, 2012, Judge Kirk Nakamura struck down the CashCall Employee Acknowledgement Form relative to Squires finding that the "Agreement is procedurally unconscionable because it was made a condition of employment (citation omitted) and because it incorporates AAA rules that were not provided to the Plaintiff." The Court further found that having the plaintiff to bear costs and attorney's fees is unconscionable. Ultimately, the Court ruled, "the failure to eliminate the illegal cost-sharing provision from the Agreement evidences, when combined with other unconscionable elements, indicates "a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."

NGUYEN: CLASS COMPLAINT

40.     Between September 6, 2012 and October 29, 2012, Defendant CashCall created its second generation of CashCall Employee Acknowledgement Forms changing the cost sharing provision to reflect that "The Company will pay for all of the costs and expenses of such arbitration," but refusing to budge on using JAMS knowing that the Court had just ruled that not providing a copy of JAMS rules and the limiting features of JAMS' employment procedural rules created an impediment for a plaintiff employee to litigate in that forum and an unfair advantage to Defendant CashCall.

41.     Plaintiffs lacks information and belief if they signed the CashCall Employee Acknowledgement form.

42.     It was Defendant CashCall's intent and conscious or reckless disregard of the law at the time of the changed policies and procedures and the implementation of the CashCall Employee Acknowledgement Form to circumvent the policies and law relative to non-exempt employees and the payment of overtime compensation by requiring new hires to surrender their rights to a jury trial in civil court and to act as a class representative in a civil suit, leaving each employee with only an individual claim in arbitration.  The purpose of such changed policies and procedures was to avoid, directly or indirectly, paying full compensation due and owing to Plaintiff and all other similarly situated loan agents, by defeating future class litigation and fragmenting all claims into individual ones.  The effect of such unlawful and surreptitious changed policies and procedures was to make it difficult, unfeasible or overly burdensome for an individual and groups of employees to bring an action for the claims set forth in this pleading, and each of them.

43.     On or about March 24, 2010, the United States Department of Labor, Wage and Hour Division, issued Administrator's Interpretation No.

NGUYEN: CLASS COMPLAINT

2010-1 and concluded, "[b]ased upon a thorough analysis of the relevant factors, the Administrator has determined that mortgage loan officers who perform the typical duties described above have a primary duty of making sales for their employers, and, therefore, do not qualify as bona fide administrative employees exempt under Section 13(a)(1) of the Fair Labor Standards Act, 29 *U.S.C.* § 213(a)(1)."

44.    At the time Defendant CashCall, Inc. promulgated the changed policies and procedures, including the implementation of the CashCall Employee Acknowledgement Form, the administrative regulations treated mortgage loan officers and other loan officers as non-exempt.  Defendant CashCall, Inc. knew or should have reasonably known this Administrative Interpretation No. 2010-1.

45.    The changed policies and procedures, including the implementation of the CashCall Employee Acknowledgement Form, were used to violate the Fair Labor Standards Act, the California Labor Code and the DOL Administrative Interpretation No. 2010-1, as well as the public policies that support these enactments.

46.    Given that the changed policies and procedures, including the implementation and the requirement that new hires sign the CashCall Employee Acknowledgement Forms as a condition of employment, the CashCall Employee Acknowledgement Form constitutes an unlawful contract in violation of *Cal. Civil Code* § 1667 (1) as "contrary to an express provision of law" and *Cal. Civil Code* § 1667 (2) as "contrary to the policy of express law, though not expressly prohibited."

47.    Additionally, the CashCall Employee Acknowledgement Form was such a contract, which had for its object, directly or indirectly, to exempt Defendant CashCall from responsibility for its willful injury to the person or property (wages) of another, and the violation of law, whether

NGUYEN: CLASS COMPLAINT

1  willful or negligent, as against the policy of the law.  See *Cal. Civil Code* §

2  1668.

3      48.    As part of Defendant CashCall's changed policies and

4  procedures, Defendant CashCall presented the CashCall Employee

5  Acknowledgement Form to new hires, failing to inform new hires of the

6  substance of the Form as waiving a jury trial right, a civil action, and the

7  right to act as a class representative in any employment dispute, including

8  wage and hour violations.  The Form was hidden in groups of papers that

9  new hires were required to sign as part of the "employment documents"

10  without providing the employees sufficient time to review the

11  documentation or to provide them an opportunity to consult an attorney as

12  to what they were signing, nor did Defendant CashCall provide any form

13  of explanation as to the waivers and acknowledgement.

14      49.    The CashCall Employee Acknowledgement Form was

15  unlawful and procedurally and substantively unconscionable under *Cal.*

16  *Civil Code* § 1670.5.  As a result, the Acknowledgement Form is

17  unenforceable.  The CashCall Employee Acknowledgement Form violated

18  Sections 7 and 8 of the NLRA by barring, prohibiting and preventing

19  CashCall's loan agents from engaging in "concerted activity" to pursue

20  legal action to protect their rights to mutual aid and protection as afforded

21  under NLRA through waiver of those rights and then compelling

22  CashCall's loan agents to "separate proceedings" by only permitting

23  individual action in place and instead of class, collective and/or

24  representative actions.

25      50.    The CashCall Employee Acknowledgement Form allows

26  CashCall's unlawful activity to hide behind the confidential nature of

27  arbitration through JAMS, whose rules limits discovery and deposition.

28  Under JAMS, Rule 17, absent an agreement by the parties to the contrary

NGUYEN: CLASS COMPLAINT

or an order from the arbitrator, Plaintiff is only entitled to one deposition; whereas, there is no limitation on the number of depositions that can be taken at the Superior Court level and a 10-deposition limit at the Federal level.  The limitation on the number of depositions works to the advantage of the Defendant who has better access to witnesses and documents; whereas, employees are required to take depositions to succeed with their wage and hour and discrimination cases.  Leaving it up to the discretion of an arbitrator or agreement of the parties reduces Plaintiffs' equal access to discovery and investigation and cripples his chances of success based upon the inherent flaws in JAMS arbitration process in the context of proving his alleged claims.

51.    Plaintiffs hereby give notice through the service of this complaint that if they had executed said CashCall Employee Acknowledgement Form, that they now rescinds the CashCall Employee Acknowledgement Form, and each term set forth therein, because it is unlawful, a violation of public policy, and procedurally and substantively unconscionable in accordance with *Cal. Civil Code* § 1689.

52.    If Plaintiffs signed the CashCall Employee Acknowledgement Form, there is no clear and unmistakable evidence that Plaintiffs agreed to arbitrate all employment disputes, waiving their rights to a jury trial, civil trial, and to act an class representatives in a collective or class action. Plaintiff did not have a say in or participated in negotiating the CashCall Employee Acknowledgement Form.  It was solely created by Defendant CashCall and its attorneys.  There was no equal bargaining position or mutuality of the agreement.  Thus, the Acknowledgement Form was an "adhesion contract."

53.    The CashCall Employee Acknowledgement Form was a standardized contract that Plaintiffs had no ability to negotiate or adequate

NGUYEN: CLASS COMPLAINT

1  time to review before signing.  Defendant CashCall had a superior

2  bargaining position.

3  ## VI.  CLASS ACTION ALLEGATIONS

4  54.    Plaintiffs hereby incorporates by reference each and every one

5  of the preceding paragraphs above as though fully set forth herein.

6  55.    <u>Ascertainable Class</u>:        In addition to their individual state

7  and federal claims, Plaintiffs bring their California state claims as a class

8  action, on behalf of themselves and all other similarly situated CashCall,

9  Inc.'s former and current loan agents, pursuant to *Federal Rules of Civil*

10  *Procedure,* Rule 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).  Plaintiffs further

11  bring their federal claims as a collective action in accordance with 29

12  *U.S.C.* §216(b).  The Class or collective action that Plaintiffs seek to

13  represent is composed of and defined as follows:

14

15  "All persons who are employed or have been employed by
Defendants as "Loan Consultants" or "Loan Agents" in the State of
16  California at any time during the relevant statute of limitations
period for each claim." (L.R. 23-2.2(a))

17  56.    Alternatively, Plaintiffs seek certification of any subclass of

18  the above-mentioned claims, and each of them, during the applicable

19  statute of limitations period, including but not limited to, a) each

20  Defendant, b) each Plaintiff Class, subclass or team of loan agents, c) each

21  claim, and/or d) a liability only class consisting of 1) each and/or every

22  Plaintiff Class or subclass, 3) each claims and/or 3) each and every

23  predominate common issue of fact and/or law, as deemed appropriate

24  (collectively, "Plaintiff Subclasses").

25  57.    This action has been brought and may properly be maintained

26  as a class action under *Federal Rules of Civil Procedure, Rule 23* and

27  *Central District Court Local Rules of Court 23-2* because there is a well-

28  defined community of interest in the litigation and the proposed class is

NGUYEN: CLASS COMPLAINT

1    easily ascertainable.

2        58.   <u>Numerosity</u>:     The exact number of members of the class,

3    as hereinabove identified and described, is not known, but it is estimated

4    that there are not less than 300-500 putative class members as similarly

5    situated loan agents who worked at CashCall and Impac during the

6    relevant statute of limitations period.  The class is so numerous that joinder

7    of individual members herein is impracticable.

8        59.   <u>Commonality:</u> There are common questions of law and fact in

9    the action that relate to and affect the rights of each member of the class

10    and the relief sought is common to the entire class, namely the acts,

11    representations and/or omissions of material facts by Defendants

12    concerning the execution of the Employee Acknowledgement Form and

13    the payment of wages, and other such issues alleged herein. The substance

14    of these acts, representations and/or omissions of material fact,

15    disseminated to and/or concealed from the class members, are common

16    facts that violate, inter alia, the federal and state wage/hour laws as alleged

17    herein.  Questions of law or fact exist arising from the execution of the

18    Employee Acknowledgement Form and the payment of wages.  Such

19    questions are common to all class members and predominate over any

20    questions affecting only individual members of the class.  The myriad of

21    questions of law or fact common to the class includes, *inter alia*:

22        (a)    Whether Defendants have policies, procedures and practices

23    that are standardized and apply to all of its non-exempt California loan

24    agent employees.  Accordingly, all of the California Labor Code

25    violations described below were uniform among each and every location

26    in California.  In other words, all of the California Labor Code violations

27    were violated the exact same way.

28

NGUYEN: CLASS COMPLAINT

(b)    Whether Defendants' policies, practices or performance objectives required Plaintiffs and class members to work off the clock to meet performance objectives.

(c)    Whether Defendants knew or should have known that Plaintiffs and class members were working off the clock.

(d)    Whether Defendants violated California Industrial Welfare Order Nos. 4-98, and 4-2000, and/or 4-2001 and *Cal. Labor Code* §§ 510 and 1194 by failing to pay overtime compensation to loan agents who worked in excess of 40 hours per week and/or eight (8) hours a day.

(e)    Whether Defendants violated 29 *U.S.C.* § 207 (a) (1) by failing to pay overtime compensation for a workweek longer than forty hours .

(f)    Whether Defendants violated *Cal. Business and Professions Code* §17200 by failing to pay overtime compensation to loan consultants who worked in excess of forty (40) hours per week and/or eight (8) hours a day.

(g)    Whether Defendants violated California Industrial Welfare Order 4-2000 and/or 4-2001 and *Cal. Labor Code* §§ 226.7 and 512 by failing to afford loan agents proper meal and rest periods.

(h)    Whether Defendants violated *Cal. Business and Professions Code* §17200 by failing to afford Plaintiffs and class members proper meal and rest periods.

(i)    Whether Defendants violated *Cal. Labor Code* §§ 226, 226.3, and 1174 by failing to keep accurate records of Plaintiffs and class members' hours of work.

(j)    Whether Defendants violated *Cal. Labor Code* §§ 221-223 and 400-410 by making unlawful deductions from wages earned by or due to Plaintiffs and class members.

NGUYEN: CLASS COMPLAINT

(k)      Whether Defendants violated *Cal. Business and Professions Code* §17200 by making unlawful deductions from wages earned by or due to Plaintiffs and class members.

(l)      Whether Defendants violated *Cal. Labor Code* §§ 201-203 by failing to pay overtime wages due and owing at the time that Plaintiffs and Class Members' employment with Defendants terminated.

(m)      Whether Defendants violated *Cal. Business and Professions Code* §17200 by failing to pay overtime wages due and owing at the time that Plaintiffs and Class Members' employment with Defendants terminated.

(n)      Whether Defendants violated by failing "provide" (i.e., "authorize and permit") meal and rest periods as required by *Cal. Labor Code* §§ 226.7, 512, and 516.

(o)      Whether Defendants violated *Cal. Business and Professions Code* §17200 by failing to "provide" meal and rest periods to Plaintiffs and Class Members' employment.

(p)      Whether Defendants utilized a meal and rest break policy that violated the parameters of *Brinker Restaurant Group v. Superior Court* (2012) 53 Cal.4[th] 1004 by engaging in a policy of "rolling 5-hour rule" and/or requiring Plaintiffs and Class Members to work at their desks during rest and meal periods.

(q)      Whether Defendants' policies or practices required Plaintiffs and class members to work more than four hours without a proper meal or rest break.

(r)      Whether Defendants' Employee Acknowledgement Form is illegal, unconscionable and, therefore, unenforceable;

(s)      Whether Plaintiffs and Class Members have been damaged and, if so, what is the proper measure of damages;

NGUYEN: CLASS COMPLAINT

(t)     Whether Defendants has been unjustly enriched as a result of its conduct alleged herein; and

(u)     Whether Plaintiffs and Class Members are entitled to any equitable, injunctive and/or declaratory relief, and the scope of such relief.

(v)     Whether Defendants' Employee Acknowledgement Form violated Sections 7 and 8 of the NLRA;

(w)     Whether the Defendants' Employee Acknowledgement Form must be rescinded because it is illegal, unconscionable, and/or unenforceable, where consent cannot be given and thus any waiver of collective, class or representative actions are violated of Congressional intent and national policy underlying the NLRA.

60.     <u>Typicality:</u>   Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all other similarly situated employees worked uncompensated overtime, off the clock, which Defendants and its management knew or should have known of such policies and practices, when its management team had worked or previously worked for CashCall, Inc., which had been riddled by multiple class action and individual lawsuits for unpaid overtime and meal and rest periods. Plaintiff alleges that CashCall management were recruited to work for Impac.  The policies and practices of CashCall, Inc. were followed and adhered to by Impac, using substantially similar compensation and tier bonus payment plans.  Plaintiffs allege that CashCall, Inc. sold its mortgage lending business to IMH to "cleanse" its negative CashCall, Inc.'s reputation by creating a new company called Impac Mortgage, Corp. dba CashCall Mortgage that provided the same mortgage services that CashCall provided.   Plaintiffs and all other similarly situated employees sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

NGUYEN: CLASS COMPLAINT

61.    <u>Adequacy of Representation:</u>    Plaintiffs reside and were employed by Defendants, and each of them, in California at all relevant times, and is an adequate representative of the Plaintiff Class and/or Plaintiff Subclasses as he has no interests that are adverse to the interests of absent class members with respect to this action, or with respect to the claims for relief herein set forth.

62.    The attorneys for Plaintiffs are experienced and capable in litigation in the field of wage and hour and class litigation and have successfully represented claimants in other litigation of this nature, and will actively conduct and be responsible for Plaintiffs' case herein.

63.    <u>Superiority of Class Action:</u>    A class action is maintainable and superior to other available methods for the fair and efficient adjudication of the controversy for the parties and the judicial system, in that:

(a)    The costs of prosecuting the action individually will exceed the costs for prosecuting the case as a class action; class certification will obviate the necessity of multiplicity of claims;

(b)    There is a desirability of concentrating the litigation of the claims and/or issues in this forum to protect California employees;

(c)    Each Class Member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices of permitting, encouraging, and/or requiring loan consultants to work in excess of forty (40) hours per week and/or eight (8) hours per day, without paying overtime compensation, failing to provide proper meal periods, and making unlawful deductions from wages..

(d)    Unification of common questions of fact and law into a single adjudication by this court will reduce the likelihood and/or risk of inconsistent rulings, opinions, and decisions;

NGUYEN: CLASS COMPLAINT

(e)     Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(f)     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims and issues in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

64.     Plaintiffs further allege that a class action is superior for the fair and efficient adjudication of this dispute.  Because of the nature of the misrepresentations, acts and/or omissions of material facts by Defendants concerning the Employee Acknowledgment Form and policies and procedures involving working of the clock, most loan agents will not realize they have a claim.  A class action is therefore essential to prevent a failure of justice.  Even if a loan agent did realize the existence of wage and hour claims against Defendants, the size of the claims involved does not warrant individual litigation of the magnitude and complexity necessary to challenge Defendants' unlawful conduct.  Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

65.     <u>Notice to Proposed Class Members:</u>  Plaintiffs are informed and believes that Defendants have computer access to a list of the names

NGUYEN: CLASS COMPLAINT

and addresses of all class members who worked as loan agents and sufficient record keeping to determine the hours worked and not compensated for. The nature of notice to the proposed class contemplated will be through email and/or direct mailing to Defendants' lists of similarly situated loan agents, if available, internet website posting, and/or publication. Plaintiffs can contemplate that a third party administrator, such as CPT group or Rust Consulting, could be appointed to handle notice issues to class members. The costs of the third party administrator will be borne by Defendants, including any skip traces as to returned notices or no contact with certain class members.

66.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Unpaid wages and other damages or restitutionary relief may be made or disgorged into a fluid recovery fund and/or distributed to each class member by making a claim therefor.

## FIRST CLAIM

### Unlawful Failure to Pay Required Overtime

### (*Wage Orders 4-2000, 4-2001; Cal. Labor Code §§ 510 and* 1194
### against all Defendants)

67.     Plaintiffs hereby incorporate paragraphs 1 through 66 as though fully set forth herein.

68.     By their failure to pay overtime compensation as alleged above, Defendants have violated and continue to violate the provisions of IWO 4-2000 and 4-2001 and *Cal. Labor Code* §§ 510 and 1194, which require overtime compensation to non-exempt employees.

69.     By failing to keep accurate time records required by *Cal. Labor Code* §§ 226, 226.3, and 1174(d), IWO 7(A)(3), (4), (5), IWO 7(B), Defendants have made it difficult to calculate the overtime compensation

NGUYEN: CLASS COMPLAINT

due Plaintiffs and all other similarly situated employees, although Plaintiffs are informed and believes that Defendants have time records of the actual time loan agents "timed-in" and "timed-out" and other records to show Defendants knew or should have known how many hours Plaintiffs and all other similarly situated employees actually worked during their entire employment period.

70.    Plaintiffs request relief as described below.

## SECOND CLAIM

### Unlawful Failure to Provide Adequate Meal Periods

### (*Cal. Labor Code §§ 226.7, 512; Wage Order No. 4-2000, 4-2001(11) And (12)* against all Defendants)

71.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 70 above as though fully set forth herein.

72.    Plaintiffs and all other similarly situated employees regularly work in excess of five (5) and ten (10) hours a day without being afforded at least half-hour meal periods in which they were relieved of all duties, as required by *Cal. Labor Code* §§ 226.7 and 512 and Wage Order Nos. 4-2000, 4-2001 11(A).

73.    Because Defendants failed to afford proper meal and rest periods, they are liable to Plaintiffs and all other similarly situated employees for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to *Cal. Labor Code* §226.7 and Wage Order No. 4-2001, Section 11(B).

74.    Defendants failed to relieve Plaintiffs and all other similarly situated employees of all duty during the 30-minute meal period as required by IWO 11(A).  Failure to relieve Plaintiffs and all other similarly

NGUYEN: CLASS COMPLAINT

1    situated employees of all duty shall be "considered an "on duty" meal

2    period and counted as time worked." IWO 11(A).

3        75.    Plaintiffs and all other similarly situated employees worked

4    without rest periods, as required by IWO (12) of a 10-minute rest period

5    for every 4 hours worked, resulting in a total 20-minute rest period for an 8

6    hour work shift.  Defendants knew or reasonably should have known that

7    Plaintiffs and all other similarly situated employees were working during

8    the meal period, and, therefore, Defendants are liable for payment of

9    Plaintiffs and all other similarly situated employees' regular or overtime

10   wage for that time worked.

11       76.    Defendants failed to relieve Plaintiffs and all other similarly

12   situated employees of all duty during the 10-minute rest period for every 4

13   hours worked as required by IWO 12(A).

14       77.    Plaintiffs and all other similarly situated employees are

15   entitled to recover 1 hour of pay at the employee's regular rate of

16   compensation for each workday that the meal or rest period was not

17   provided. *IWO 11(B) and 12(B), Cal. Labor Code* § 226.7 (c).

18       78.    Plaintiffs request relief as described below.

19                        **THIRD CLAIM**

20       **Unlawful Deductions from Wages Earned by Employees**

21       ***(Cal. Labor Code §§ 221-223 and 400-410* against all Defendants*)***

22       79.    Plaintiffs hereby incorporate by reference Paragraphs 1

23   through 78 above as though fully set forth herein.

24       80.    *Cal. Labor Code* §§ 221-223 and 400-410 make it unlawful

25   for an employer to make deductions from wages for business losses unless

26   the employer can establish that the loss was caused by a dishonest or

27   willful act, or by the culpable negligence of the employees.

28

NGUYEN: CLASS COMPLAINT

81.     Defendants have made and/or continue to make unlawful deductions from loan agents' wages, including Plaintiffs, for business losses that were not caused by any dishonest or willful acts or culpable negligence on the part of the loan agents. One of the primary reasons for the deductions was to punish loan agents for working in excess of 10 hours of overtime a work.  As a result, Defendants are liable to Plaintiffs and all other similarly situated employees for the amounts unlawfully deducted.

82.     Plaintiffs request relief as described below.

## FOURTH CLAIM

## Unfair Competition

### (Cal. Bus. & Prof. Code §§ 17200-17208 against all Defendants)

83.     Plaintiffs hereby incorporate Paragraphs 1 through 82 as though fully set forth herein.

84.     Defendants' failure to pay legally required overtime compensation under the Wage Orders and under *Cal. Labor Code* §§ 201-202, 510 and 1194, failure to provide legally required meal periods, failure to keep proper time records under *Cal. Labor Code §1174,* and practice of making unlawful deductions from the Plaintiffs and all other similarly situated employees' wages in violation of *Cal. Labor Code §§221-223 and 400-410,* as alleged above, constitute unlawful activity prohibited by *Cal. Business and Professions Code* §17200.

85.     Additionally, Defendants engaged in an unfair, unlawful and fraudulent policy, practice or procedure of having Plaintiffs and all other similarly situated employees sign the Employee Acknowledgement Form as a condition of employment to obtain waivers from Plaintiffs and all other similarly situated employees to bring collective, class or representative actions for protected work-related rights violated "concerted activity" protected under Sections 7 and 8 of the NLRA, constitute

NGUYEN: CLASS COMPLAINT

1  unlawful activity prohibited by *Cal. Business and Professions Code*

2  §17200.

3      86.    As a result of their unlawful acts, Defendants have reaped and

4  continue to reap unfair benefits and illegal profits at the expense of

5  Plaintiffs and all other similarly situated employees. Defendants should be

6  enjoined from this activity and made to disgorge these ill-gotten gains and

7  restore to Plaintiff and all other similarly situated employees the

8  wrongfully withheld wages, interest and/or related waiting time penalties,

9  pursuant to *Cal. Business and Professions Code* §17203.

10      87.    Plaintiffs request relief as described below.

11  **FIFTH CAUSE OF ACTION**

12  **Violation of Recordkeeping Requirements**

13  ***(29 U.S.C. § 211(c), Cal. Labor Code §§ 226, 1174-1175* against all**

14  **Defendants*)***

15      88.    Plaintiffs hereby incorporate by reference Paragraphs 1

16  through 87 above as though fully set forth herein.

17      89.    Plaintiffs bring this action on behalf of themselves and all

18  other similarly situated aggrieved employees for Defendants' violation of

19  29 *U.S.C.* § 211(c) and *Cal. Labor Code* §§ 226, 1174-1175, for failure to

20  make and keep accurate records for Defendants' loan agents' wages, hours,

21  and other conditions of employment.

22      90.    29 *U.S.C.* Section 211(c) (in part) provides: "Every employer

23  subject to any provision of this Chapter or of any order issued under this

24  Chapter shall make, keep, and preserved such records of the persons

25  employed by him and of the wages, hours, and other conditions and

26  practices of employment."

27      91.    *Cal. Labor Code* § 226(a) provides in part: "Every employer

28  … shall furnish to his or her employee . . . an accurate itemized statement

NGUYEN: CLASS COMPLAINT

1  in writing showing (1) gross wages earned, (2) total hours worked by the

2  employee …"

3      92.    Plaintiffs and all other similarly situated aggrieved employees

4  for Defendants worked "off the clock" with the knowledge of management

5  in order to achieve performance objectives under Defendants'

6  implemented Tier program that was utilized by CashCall and Impac.

7  Defendants' management knew or should have known, with reasonable

8  investigation on its part, that loan agents were working off the clock and

9  late at night in order to achieve Defendants' production requirements,

10  which could lead to disciplinary action including termination if not met.

11  This knowledge is based on the facts that, inter alia, a) Defendants were

12  aware of multiple class actions previously filed against CashCall alleging

13  substantially similar wage/hour statutory violations based on substantially

14  similar operations as Impac, b) Defendants' team leaders worked off the

15  clock when acting in the position of a CashCall loan agent, c) Defendants'

16  team leaders had continual access to and reviewed loan agents' timecard

17  entries and activity records during the normal course of Defendants'

18  business and d) CashCall transferred loan agents and management

19  personnel to operate Impac.

20      93.    Defendants through their management did not record the "off

21  the clock" hours worked by Plaintiffs and all other similarly situated

22  aggrieved employees and did so intentionally and willfully to avoid paying

23  certain payroll taxes and overtime compensation to assure its competitive

24  edge in the loan industry and realize increased profitability.

25      94.    As a result of the failure of Defendants to comply with 29

26  *U.S.C.* § 211(c) and *Cal. Labor Code* §§ 226 (a), 1174 (d), 1174.5 and

27  1175, Plaintiffs request relief as described below.

28                          **SIXTH CLAIM**

NGUYEN: CLASS COMPLAINT

**Violation of Fair Labor Standards Act**

***(29 U.S.C. §§ 207(a) and 216(b)* against all Defendants*)**

95.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 94 above as though fully set forth herein.

96.    Plaintiffs bring this individual and collective claim to recover overtime compensation, interest, liquidated damages, attorney's fees, and costs, under the provisions of Section 16 (b) of the Fair Labor Standards Act of 1938, as amended (29 *U.S.C.* §216 (b)), hereinafter referred to as the ACT.

97.    Jurisdiction of this action is conferred on this court by Section 16(b) of the Act *(29 U.S.C. §216(b))*.  Under Section 16 (b) of the ACT, an action for overtime compensation under Section 6 and 7 of the ACT.

98.    As a proximate result of the violations of the FSLA, Plaintiffs seek the recovery of all unpaid overtime compensation, back pay, an equal amount of liquidated damages, injunctive relief, interest and attorney's fees pursuant to *29 U.S.C.* §216 (b).  Liquidated damages equal to the amount of the wages due must be awarded for FSLA violation unless the employer proves that it acted in good faith and had reasonable ground to believe its conduct did not violate FSLA. 29 *U.S.C.* §§ 216 (b) and 260.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and all other similarly situated employees requests the following relief:

A.    That the Court determines that the federal claims alleged herein for violation of the FLSA, may be maintained as a collective action under 29 *U.S.C.* §216(b);

B.    That the Court determines that each California state claim alleged herein, may be maintained as a class action under *F.R.C.P.* Rule 23;

NGUYEN: CLASS COMPLAINT

1   C.     That the Court declares that Defendants have violated the

2   overtime provisions of 29 *U.S.C.* §207 (a) as to the Plaintiffs and all other

3   similarly situated employees;

4   D.     That the Court declares that Defendants have violated the

5   overtime provisions of *Cal. Labor Code* §§ 510 *and* 1194 as to the

6   Plaintiffs and all other similarly situated employees;

7   E.     That the Court declares that Defendants have violated the

8   record-keeping provisions of 29 *U.S.C.* § 211(c) and *Cal. Labor Code*

9   *§*1174(d) and Section 7 of the Wage Orders as to Plaintiffs and all other

10  similarly situated aggrieved employees;

11  F.     That the Court declares that Defendants have violated *Cal.*

12  *Labor Code* §§ 226.7, 512 by failing to afford Plaintiffs and all other

13  similarly situated employees adequate meal periods;

14  G.     That the Court declares that Defendants have violated *Cal.*

15  *Labor Code* §§226.7, 512 and Wage Order Nos. 4-2001(12) by failing to

16  afford Plaintiffs and all other similarly situated aggrieved employees of

17  adequate rest periods;

18  H.     That the Court declares that Defendants have violated *Cal.*

19  *Labor Code* §§ 211-223 and 400-410 by making unlawful deductions from

20  wages earned by or due to the Plaintiffs and all other similarly situated

21  employees;

22  I.     That the Court declares that Defendants have violated *Cal.*

23  *Labor Code* §§ 201, 202 and 203 for willful failure to pay all

24  compensation owed at the time of termination of employment to Plaintiffs

25  and all other similarly situated employees;

26  J.     That the Court declares that Defendants have violated *Cal.*

27  *Business and Professions Code* §17200 by failing to pay Plaintiffs and all

28  other similarly situated aggrieved employees overtime compensation, by

Page 34

NGUYEN: CLASS COMPLAINT

failing to keep proper time records, by failing to afford Plaintiffs and all other similarly situated aggrieved employees adequate meal and rest periods, by making unlawful deductions from Plaintiffs and all other similarly situated aggrieved employees' wages, by failing to keep accurate information with respect to each employee concerning "time records showing when the employee begins and ends each work period," "total hours worked in the payroll period," and by making this information readily available to the employee upon reasonable request. (IWO 7, 11, and 12);

K.     That the Court declares that Defendants' violations as described above are found to have been willful;

L.     That the Court award to Plaintiffs and all other similarly situated employees damages and/or restitution for the amount of unpaid overtime compensation, unpaid compensation for meal and rest periods and unlawful deductions, including interest thereon, liquidated damages and penalties, in an amount in excess of $5,000,000, the exact amount to be ascertained at time of trial or default prove-up;

M.     That Defendants further be enjoined to cease and desist from unfair, deceptive and unlawful activities in violation of *Cal. Business and Professions Code* § 17200;

N.     That Plaintiffd be awarded reasonable attorneys' fees and costs pursuant to *Cal. Labor Code* §§ 218.5, 226 (3) (1) (a), 558, and 1194, *Cal. Code of Civil Procedure* §1021.5, under 29 *U.S.C.* § 216 (b,) and/or other applicable law;

O.     An award to Plaintiffs and all other similarly situated employees of damages for the amount of unpaid overtime compensation, including interest thereon, liquidated damages, and penalties in accordance

Page 35

NGUYEN: CLASS COMPLAINT

with 28 *U.S.C.* §216 (b) in an amount according to proof at trial, the exact amount to be ascertained at time of trial or default prove-up;

     P.     That the Court rescind, revoke, invalidate, and declare that Defendants' Employee Acknowledgement Forms in effect between January 21, 2011 through the present are unenforceable, illegal, unconscionable, and unlawful in violation of law or the public policy in support of the law;

     Q.     That the Court declare Defendants failed to make and keep accurate payroll records of hours worked by Plaintiffs and all other similarly situated employees as required by 29 *U.S.C.* § 211(c) and *Cal. Labor Code* §§ 226, 1174-1175;

     R.     As a result of the failure of Defendants to comply with 29 *U.S.C.* § 211(c) and *Cal. Labor Code* §§ 226 (a), 1174 (d), 1174.5 and 1175, Plaintiffd and all other similarly situated aggrieved employees seek the following relief:

     1)  That Plaintiffs and each similarly situated aggrieved employee be deemed to have suffered injury from the inaccurate records maintained by Defendants (*Cal. Labor Code* § 226 (e) (2) (B));

     2)  Plaintiffs seek injunctive relief to enjoin Defendants' policy or practice of ignoring "off the clock" work performed by current loan agents and not properly and accurately reporting hours worked;

     3)  Penalties of $50 for initial pay period in which the violation occurred and $100 per employee for each violation in a subsequent pay period not exceeding $4,000;  (*Cal. Labor Code* § 226 (e) (1) (a));

NGUYEN: CLASS COMPLAINT

1            S.        That Plaintiffs and/or all other class/collective members be

2    granted such other declaratory and/or further relief as the court may deem

3    just and proper.

4

5    DATED:  March 24, 2017           */s/  Dale M. Fiola*

6                                 DALE M. FIOLA

7                                 Attorney for Plaintiff JASON N.

8                                 NGUYEN, TAM NGUYEN and all
     other similarly situated employees

9

10

11                         **DEMAND FOR JURY TRIAL**

12           Plaintiffs hereby demand for themselves and similarly situated

13    employees a trial by jury on all claims.

14    DATED:  March 24, 2017           */s/  Dale M. Fiola*

15                                 DALE M. FIOLA

16                                 Attorney for Plaintiff JASON N.
     NGUYEN, TAM NGUYEN and all

17                                 other similarly situated employees

18

19

20

21

22

23

24

25

26

27

28

NGUYEN: CLASS COMPLAINT